AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

United States of America
v.
JULIO RAMOS, a.k.a. "Victor"

)
)
)  Case No. 3:10MJ184TPS
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 28, 2010__ in the county of __Hartford__ in the _____ District of __Connecticut__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(A) | Possession with Intent to Distribute 1 Kilogram or More of Heroin |

This criminal complaint is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

_____ pillai
*Complainant's signature*

ABHILASH PILLAI, Special Deputy U.S. Marshal
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/1/10

City and state: Hartford, CT

/s/ Thomas P. Smith, USMJ
*Judge's signature*

/s/ Thomas P. Smith, USMJ
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT     :
                         :
                         :   ss: Hartford, October 1, 2010
                         :
COUNTY OF HARTFORD       :

## AFFIDAVIT

I, Abhilash Pillai, a Special Deputy United States Marshal, having been duly sworn, do hereby state:

## I. INTRODUCTION

1. I am a Detective with the Hartford Police Department and have been employed as a Hartford Police Officer for approximately 6 ½ years. My responsibilities include investigating and enforcing all city and state criminal laws. I am currently assigned to the FBI's Northern Connecticut Violent Crimes Gang Task Force ("NCVCGTF"), an FBI sponsored Task Force consisting of Detectives from the Hartford Police Department and the Connecticut State Police. The NCVCGTF is a joint federal, state and local task force dedicated to combating violent crime and firearms and narcotics violations in and affecting the City of Hartford. As a member of the NCVCGTF, I have been duly deputized as a Special Deputy United States Marshal which authorizes me to investigate violations of federal criminal law. I attended the Hartford Police Academy in Hartford, Connecticut where I received law enforcement training, including firearms training, the execution of search and seizure warrants, investigative techniques, and legal instruction, which covered Forth Amendment searches and seizures.

2. As a Hartford Police Detective and Task Force Officer assigned to NCVCGTF, I

1

have written and executed search warrants which have resulted in the seizure of illegal drugs and evidence of drug violations. I have participated in investigations involving the illegal distribution of controlled substances. I have coordinated controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses and undercover law enforcement officers, written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs, conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution, analyzed records documenting the purchase and sale of illegal drugs, and provided testimony in proceedings before the Connecticut Superior Court, United States District Court and a federal grand jury. I have also interviewed admitted drug traffickers, drug users, informants and cooperating defendants, as well as local, state and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have supervised the activities of informants and cooperating witnesses who have provided information and assistance in the federal prosecution of drug offenders. I have participated fully in this investigation and, as a result of this participation, as well as information provided by other law enforcement officers, I am thoroughly familiar with the information contained herein.

3. For the reasons set forth in this Affidavit, I believe there is probable cause to arrest **JULIO RAMOS**, a.k.a. "Victor, with a date of birth of March 1, 1973, most recently of 36 Bonner Street and 121 Gilman Street, Hartford, Connecticut, for the offense of possession with intent to distribute 1 kilogram or more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i). As this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that **RAMOS** violated Title 21, United States Code, Section 841(a)(1).

## II. FACTS AND CIRCUMSTANCES RELEVANT TO PROBABLE CAUSE

4. Beginning in August 2010, this affiant and Hartford Police Detective Mark Rinaldi, who is also assigned to the NCVCGTF and who has been duly deputized as a Special Deputy United States Marshal, received information from a confidential and reliable informant (hereafter the "CI") about illegal narcotics activity taking place in the first floor west side apartment of 36 Bonner Street, Hartford, Connecticut. This CI has previously provided investigators assigned to the NCVCGTF with timely and accurate information regarding the distribution of illegal narcotics and possession of illegal weapons. The information provided by the CI has directly resulted in the seizure of weapons and narcotics, and other controlled substances, and the arrests of those engaged in such unlawful activity.

5. The CI told investigators that a Hispanic male, identified by the name of "Victor" was distributing heroin and "stashing" the heroin inside his apartment at 36 Bonner Street. The CI stated that the apartment was the only apartment on the first floor west side of 36 Bonner Street. The CI provided investigators with a detailed physical description of "Victor" and identified his vehicle as a white four-door Mercury Sable, with Connecticut marker plate 799-XYG. The CI also told investigators that during the week of September 23, 2010 s/he was inside the Bonner Street apartment and observed large amount of heroin in the dining room area. The CI stated further that the heroin was stamped "SEABISCUIT."

6. Between September 13 through 17, 2010, investigators conducted surveillance of 36 Bonner Street and observed a white four-door Mercury Sable, with Connecticut marker plate

3

799-XYG, parked in the rear of 36 Bonner Street. Investigators confirmed that Connecticut marker plate 799-XYG was assigned to a 2000 white Mercury Sable and registered to **JULIO RAMOS**, with a date of birth of March 1, 1973, of 36 Bonner Street, Apartment 1W, Hartford, Connecticut.

7. According to the Hartford Police database, RAMOS was previously arrested by the Hartford Police Department and the physical description was consistent with the physical description provided by the CI. RAMOS' booking photo was included with seven other photographs of similarly appearing males and shown to the CI. The CI positively identified RAMOS as the person s/he knows as "Victor" who lives at 36 Bonner Street.

8. On or about September 13, 2010, at the direction and under the supervision of Task Force Officers (TFOs) Pillai and Rinaldi, the CI purchased 100 bags of heroin from RAMOS for $300. Prior to the transaction, investigators observed RAMOS' vehicle parked in the driveway of 121 Gilman Street. RAMOS was observed leaving 121 Gilman Street and meeting with the CI in the CI's vehicle. While in the vehicle RAMOS removed from his right front pocket 100 bags of heroin (which were stamped SEABISCUIT) and handed them to the CI in exchange for the $300.

9. On or about September 28, 2010, TFO Rinaldi and I received information from the CI that RAMOS was distributing heroin in the area of 36 Bonner Street. At approximately 10:00 a.m., investigators initiated surveillance of 36 Bonner Street. At approximately 12:05 p.m., investigators observed RAMOS exit the front door of 36 Bonner Street and walk in a westerly direction on Bonner Street. Investigators observed a large bulge in RAMOS' right front pocket. According to the CI, RAMOS usually keeps the heroin in his right front pants pocket.

RAMOS continued to walk on Bonner Street to its intersection with Hillside Avenue and stopped near the entrance of Glorimar Market at 158 Hillside Avenue. At the same time, the CI told investigators that RAMOS was in possession of a large amount of heroin.

10. At this time, TFO Rinaldi and I requested uniformed Hartford Police officers to approach RAMOS and inquire about his actions. As the officers exited their marked police cruiser and walked towards RAMOS, RAMOS observed the officers and quickly walked inside Glorimar Market, where the officers lost sight of him. When the officers entered the market, they observed RAMOS standing in the rear of the store. As the officers walked towards RAMOS, RAMOS began to walk toward the front of the store. The officers stopped RAMOS near the center aisle of the store. RAMOS was asked what he was doing in the store and for identification. RAMOS responded that he had been in the store for ten minutes and would not give the officers his identification. RAMOS was told that the officers were conducting a narcotics investigation and wanted to confirm his name and address. RAMOS responded, "oh well, just take me to jail then." RAMOS was asked again for his identification and purpose for being in the store. RAMOS responded, "no, I'm not telling you." RAMOS was asked if he lived at 36 Bonner Street, to which he responded "I don't know where Bonner Street is." RAMOS was placed under arrest for interfering with police. A search of RAMOS' person incident to arrest yielded no narcotics, and the pronounced bulge in RAMOS' right front pocket was no longer present. Investigators checked the areas of the market where RAMOS was seen, but no heroin or other contraband was located. There were numerous other persons inside the market during this time, and RAMOS could have accessed anywhere in the market before officers arrived.

11. Investigators proceeded to 36 Bonner Street to further their investigation. When investigators approached the first floor west side apartment, they observed that it was ajar. Investigators knocked on the door and announced "Hartford Police." As I stood at the front door, I detected a strong distinct order of heroin which I recognized from my training and experience coming from inside the apartment. Shortly thereafter, I and other investigators heard a female voice and sounds of things being frantically moved around. We again announced our presence but received no response. We continued to hear things being frantically moved around inside the apartment. To ensure the well being of the occupant(s) of the apartment investigators entered and again announced their presence. When investigators entered the rear bedroom, a female later identified as Adaliz Delgado, was standing next to a wooden table. In plain view, on the floor next to Delgado, were numerous clear plastic sleeves, with each sleeve containing yellow wax paper bags as being consistent with packaged heroin. Delgado and the apartment were secured pending application for a State of Connecticut search and seizure warrant.

12. At approximately 3:00 p.m., TFO Rinaldi and I returned to the Bonner Street apartment with a search and seizure warrant signed by a Connecticut Superior Court judge. The resulting search of the apartment resulted in the recovery of the following:

    a) 576 sealed plastic sleeves, each containing a yellow folded wax paper bag stamped "SEABISCUIT" in red ink, with each bag containing a beige powder substance, a sample of which tested positive for the presence of heroin (rear bedroom on ironing board);

    b) heat sealer and numerous orange rubber bands (rear bedroom on ironing board);

    c) 99 sealed plastic sleeves, each containing a yellow folded wax paper bag stamped "SEABISCUIT" in red ink, with each bag containing a beige

powder substance, a sample of which tested positive for the presence of heroin (rear bedroom on floor);

d) grinder with powder residue, digital scale, ink stamps, latex gloves, plastic bags, red ink bottle, stamp pad, sifter and numerous wax bags stamped "SEABISCUIT," along with other narcotics related paraphernalia (rear bedroom on floor inside bag);

e) 1002 sealed plastic sleeves, each containing a yellow folded wax paper bag stamped "SEABISCUIT" in red ink, with each bag containing a beige powder substance, a sample of which tested positive for the presence of heroin (rear bedroom in same bag noted in preceding paragraph);

f) two knotted plastic bags containing approximately 172 grams of a powder substance consistent with that of unpackaged heroin, a sample of which field-tested positive for heroin (rear bedroom in same bag noted in preceding paragraph);

g) plate containing approximately 34 grams of a beige powder substance, a portion of which field-tested positive for heroin (rear bedroom on table near aforementioned ironing board).

13. Delgado was advised of her Miranda warnings and agreed to waive her rights and speak to investigators. Delgado provided a written statement admitting that she met RAMOS recently and agreed to package heroin in exchange for payment of $50 per day. Delgado identified RAMOS, who she knew as "Victor," from a photo array containing RAMOS' photograph and seven other similarly appearing photographs.

14. Investigators thereafter located the owner of 36 Bonner Street who confirmed that RAMOS was the lessee of Apartment 1W of 36 Bonner Street and was identified as the lessee on the lease.

15. A set of keys was seized from RAMOS' person and one of the recovered keys opened the front door to Apartment 1W of 36 Bonner Street.

16. During the investigation investigators also determined that RAMOS' had a residence at 121 Gilman Street, Hartford, Connecticut. At approximately 5:00 p.m., on September 28, 2010, investigators went to 121 Gilman Street to further investigate whether RAMOS's used this residence to store illegal narcotics or proceeds derived from the illegal distribution of narcotics. Upon arrival, investigators made contact with Jackeline Ramos, who identified herself as RAMOS' wife and resident of 121 Gilman Street, a single family residential structure. Jackeline Ramos was advised of her Miranda warnings and agreed to waive her rights and speak to investigators. Jackeline Ramos told investigators the she separated from RAMOS following a domestic violence arrest on July 13, 2010. Jackeline Ramos stated that there is a restraining order in effect preventing RAMOS from having contact with Jackeline Ramos except when RAMOS was dropping off their children. According to Jackeline Ramos, RAMOS has not lived at 121 Gilman Street since their separation, but has a key and is known to use the residence when she is at work and to store items in the basement. Jackeline Ramos provided written consent to investigators to search 121 Gilman Street.

17. During the search of the basement of 121 Gilman Street, investigators located a back pack secreted between a floor joist and ceiling. Inside the back pack were four clear knotted plastic bags each containing a beige powder substance, a portion of which field-tested positive for heroin. Each of the knotted plastic bags weighed approximately 202 grams for a total of 808 grams. During the search of the master bedroom, investigators located a safe. Jackeline Ramos told investigators that RAMOS initially took the safe after the domestic violence arrest, but several days later he asked if he could keep it in the house. Jackeline Ramos stated that she had the access code to the safe but when she attempted to open the safe, it would

8

not and that it appeared the code was changed by RAMOS. Jackeline Ramos told investigators that the safe contained approximately $20,000 which was given to RAMOS by a friend to purchase a truck. Jackeline Ramos gave permission to investigators to forcibly open the safe. When opened investigators retrieved approximately $22,906 in U.S. currency. Jackeline Ramos told investigators that she believed RAMOS worked with a friend as a truck driver, but she never saw any pay stub.

### III.   CONCLUSION

18.   Based on the foregoing information, there is probable cause to believe, and I do believe, that **JULIO RAMOS**, a.k.a. "Victor, did possess 1 kilogram or more of heroin, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(i).

*pillai*
ABHILASH PILLAI
SPECIAL DEPUTY U.S. MARSHAL

Subscribed and Sworn to before me
this ___ day of October, 2010.
/s/ Thomas P. Smith, USMJ

THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE

9